# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES DANIEL FULBRIGHT,** Plaintiff, v. **JOHN M. MCHUGH, Secretary, United States Army** Defendant. | Case No. 1:12-cv-01506 (CRC) |

# MEMORANDUM OPINION

For 25 years, plaintiff James Fulbright has sought retroactive disability retirement from the Army based on injuries he suffered while in service. In this suit under the Administrative Procedures Act ("APA"), he challenges a 2009 decision by the Army Board for Correction of Military Records denying, for the second time, his request for disability retirement status. The Secretary of the Army has moved to dismiss and both parties have moved for summary judgment. In his motion to dismiss, the Secretary argues that a prior ruling by the Court of Federal Claims ("CFC") that Fulbright's claims were barred by the Tucker Act's statute of limitations precludes his APA claims here; that Fulbright's claims are separately barred by the APA's statute of limitations; and that Fulbright may not sue in this Court under the APA because he could have received the relief he seeks in his Tucker Act case before the CFC. The Court will deny the Secretary's motion to dismiss. Fulbright's APA suit is not precluded by the CFC's prior decision because the Tucker Act's statute of limitations operates differently than the APA's, and the latter had not expired when Fulbright brought this suit. Moreover, the CFC could not have provided Fulbright the relief he seeks in this action because he solely requests injunctive relief, which the CFC can only grant ancillary to monetary damages.

The Court also concludes, however, that the board's decision denying Fulbright's request for disability benefits was adequately reasoned and based on sufficient evidence. It will, therefore, grant the Secretary's motion for summary judgment and deny Fulbright's.

**I.    Background**

    A.  <u>Regulatory Background</u>

Military disability retirement entitles former servicemembers to receive increased retirement pay and other enhanced benefits relative to standard retirement. See <u>Smalls v. United States</u>, 471 F.3d 186, 190 (D.C. Cir. 2006). Qualifying for disability retirement, however, is no small task. Military regulations establish a complex web of procedures for obtaining disability benefits after leaving active service. While the bulk of these regulations need not be discussed here, a brief summary of the pertinent rules may aid in understanding the facts and legal issues involved in this case.

Obtaining disability retirement from the Army, where Fulbright served, begins with an examination of the soldier by an Army medical examiner. See Army Reg. 635–40 ¶ 4–9. The medical examiner diagnoses the servicemember's medical conditions and makes a determination as to whether he is medically qualified to perform his particular duties. <u>Id.</u> If the medical examiner finds the soldier fit for duty, then he is not eligible for disability retirement. If the medical examiner finds the soldier unfit for duty—or if the servicemember suffers from certain enumerated conditions—the Army will convene a Medical Evaluation Board ("MEB") to review the medical examiner's diagnosis and fitness determination. <u>Id.</u> ¶¶ 4–9, 10; <u>see also</u> Army Reg. 40-501 Ch. 3. If the MEB concludes that the soldier is unfit for duty due to his or her diagnosed conditions, the Army may convene yet another board—a Physical Evaluation Board ("PEB")—to review the MEB's findings. Army Reg. 635-40 ¶ 4–13. The PEB conducts a more thorough investigation into the nature and permanency of the servicemember's condition and makes independent findings as to

2

whether the servicemember is fit for duty and qualifies for disability retirement.[1]  Id. ¶¶ 4–17, 19.  If the PEB determines that a soldier qualifies for disability retirement, it assigns a disability percentage rating based on the Department of Veterans Affairs' Schedule for Rating Disabilities.  Id. ¶¶ 3–5, 4–19*i*.  The assigned disability rating affects the level of benefits a disabled soldier will receive.[2]  See id.  PEB disability retirement recommendations are reviewed by the Army Physical Disability Agency ("APDA"), Id. ¶ 4–24, within the Army Human Resources Command.  See U.S. Army Human Resources Command Website, www.hrc.army.mil/TAGD/US%20Army%20Physical%20Disability%20Agency.  Only upon acceptance of a PEB recommendation by the APDA will a servicemember become eligible to receive disability retirement benefits.

Among several avenues of appeal open to a servicemember throughout this extensive process, he may, within three years of the relevant decision, request that the Army Board for Correction of Military Records ("ABCMR" or "board") review an adverse disability retirement determination.  Army Reg. 635-40 ¶ 2–12.  The ABCMR will review the determination for "error or injustice."  Id.

### B. Factual Background

James Fulbright joined the United States Army as an infantryman in 1974 and went on to serve in the military police branch, first as a second lieutenant and eventually as a captain.  Administrative Record ("AR") 193–95, 202.  Our story begins in 1978, when Fulbright fractured

---

[1] Even if the PEB finds that the servicemember has a disability that renders him unfit for duty, the Army can deny disability benefits if, among other reasons, the PEB finds that the disability was the result of misconduct or willful neglect.  See Army Reg. 635-40 4-19*a*(3)(a), (b).

[2] The VA rating is designed to estimate the extent to which the soldier's disabilities will impair his or her future earning potential.  38 C.F.R. § 4.1.  A 50 percent disabled servicemember under the VA Schedule would thus be expected to generate half of his otherwise expected earnings at the time of that designation.  See id.

his right ankle and sprained his left ankle and knee in a parachuting accident. Id. at 187. He aggravated his left knee sprain the next year. Id. As a result of these injuries, Fulbright was placed on restricted duty and prohibited from parachute jumping and running more than half a mile. Id. at 139.

Over a decade later, in 1989, Fulbright was passed over for promotion to major for a second time. Id. at 199. The decision not to promote Fulbright was apparently unrelated to his injuries; the Army based the decision on his overall performance and the limited slots available. Id. Because Army regulations require release from active service after missing promotion twice, Fulbright was honorably discharged from active duty "not by reason of physical disability" and transferred to inactive ready reserve status later that year. Id. at 197–99.

As required by regulation, Fulbright underwent an Army medical exam before his release from active duty. Id. at 140–41. He was diagnosed with lower back pain, chondromalacia patella (inflammation of the knee), a history of traumatic separation in both shoulders, and left foot trauma. Id. The examiners pronounced Fulbright physically fit, albeit with some limitations to his day-to-day activities. Id.; see also Army Reg. 40-501 ¶ 7–3. The medical examiner's assessment was consistent with the one Fulbright received after his parachuting accident in 1978. AR 139. In 1990, a year after his separation from active duty, Fulbright applied for, and the VA awarded him, service-connected disability compensation at a rating of 50 percent based on the same injuries that were diagnosed in his Army separation exam, in addition to hypertension. Id. at 167–68. The VA and Army have distinct systems for awarding disability benefits, neither of which is binding on the other. See, e.g., Rudo v. Geren, 818 F. Supp. 2d 17, 23 n.4 (D.D.C. 2011).

The same year, Fulbright requested that the Army Reserve Personnel Center initiate a MEB to transfer him from the inactive ready reserve group and designate him as medically retired. AR 93–95. The Army declined his request for a MEB, but, in contrast to his 1989 separation

4

examination that found him fit for active duty, the Army agreed that Fulbright did not meet the standards for retention in the inactive reserves due to the injuries to his right ankle. Id. at 102. Fulbright apparently was not given the option of disability retirement, however, and instead elected to transfer to the retired reserves while continuing to maintain that he should be eligible for disability retirement. Id. at 96.

In 1992, Fulbright applied to the ABCMR for a record correction, arguing that his 1989 separation medical examination and subsequent VA diagnosis demonstrated that he should have received medical disability retirement when he was released from active duty. Id. at 183. The ABCMR denied his request, finding that Fulbright had been physically fit for duty at the time of his separation from active duty service. The board based its finding on the 1989 separation examination—which, as previously noted, found Fulbright fit for service—as well as a letter to the board from the Office of the Surgeon General indicating that Fulbright "met retention standards at the time of discharge and an MEB was not warranted." Id. at 183–84, 187.[3] The board concluded further that the VA's 50 percent disability rating was not binding on the ABCMR because the VA does not assess a servicemember's fitness for duty when determining eligibility for its separate system of retirement benefits. Id. at 186. The ABCMR accordingly found that there was no evidence to support Fulbright's contention that his injuries prevented him from performing his duties when relieved from active duty in 1989. Id. at 185.

After first petitioning the Army Human Resources Command, Fulbright found himself back before the ABCMR fifteen years later, in 2008. He argued that the board's 1992 decision denying his request for an MEB had been erroneous and that he should have been promoted to major from the inactive reserves in 1990. Id. at 76. Waiving its three-year statute of limitations in the interest of justice, the ABCMR agreed with Fulbright that he should have been awarded a promotion to

---

[3] The record is unclear as to why the Surgeon General provided the letter.

5

major while in the reserve group. Id. at 77. It did so primarily because Human Resources Command found that Fulbright was not promoted to major in 1990 only because of an administrative error: The Office of Promotions had not received Fulbright's 1989 medical examination that showed him fit for duty. Id. at 87–88. As to his request for a MEB, however, the ABCMR found that Fulbright had failed to provide evidence demonstrating that he was disabled under army regulations, citing the same reasons it gave in its 1993 decision. Id.

Fulbright requested reconsideration of the ABCMR's decision, arguing again that the VA's 1990 disability rating is evidence that he should have received disability retirement; that his conditions "could have been exacerbated" between the 1989 physical and his 1991 retirement thereby entitling him to disability retirement even if he was fit for service in 1989; and that the Army should have conducted a new medical examination before he retired from the reserve group. Id. at 12–15. The ABCMR denied his request in December 2009, again citing his 1989 physical and distinguishing the roles of the Army and the VA in determining disability. Id. at 9–10. The board also addressed the Army's 1991 determination that Fulbright was not fit for service in the reserve group, stating that "[i]t appears the Command Surgeon . . . . presumably made a determination that [Fulbright's] condition was not aggravated by service and, therefore, he was not eligible to undergo an [MEB]." Id. at 9. The board further explained that it would be incongruous both to correct Fulbright's record to promote him to major, which required the Army to find Fulbright medically qualified for service, and to award him disability retirement, which required the Army to find precisely the opposite. Id.

Fulbright then brought suit under the Tucker Act, 28 U.S.C. § 1491, in the Court of Federal Claims ("CFC"), claiming that the ABCMR erred in denying him retroactive medical retirement. Fulbright v. United States ("Fulbright I"), 97 Fed. Cl. 221, 229 (Fed. Cl. 2011), aff'd, 480 F. App'x 998 (Fed. Cir. 2012). The CFC determined that Fulbright's claim under the Tucker Act accrued

either at the date of his release from active duty in 1989 or, at latest, the 1993 ABCMR decision. The January 2009 ABCMR decision, in the CFC's view, constituted a denial of reconsideration that did not restart the Tucker Act's statute of limitations period, as a new decision would have. Id. at 230–31. Accordingly, the CFC found that Fulbright's claims were barred by the Tucker Act's six-year statute of limitations. Id. Fulbright alternatively requested that the CFC transfer his claims to this Court for review under the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. The CFC denied the transfer request, finding that it could have offered a full and adequate remedy had the case been timely filed. Fulbright I, 97 Fed. Cl. at 231.

Fulbright proceeded to bring suit in this Court under the APA against John M. McHugh, the Secretary of the Army, arguing that the ABCMR's 2009 decisions contained manifest error because its conclusions were contradicted by record evidence. Compl. ¶¶ 22–24. The Secretary moved to dismiss, arguing that Fulbright's claims under the APA are barred by the APA's statute of limitations and the prior decision of the CFC. Def.'s Mem. in Supp. of Mot. to Dismiss at 1–2. In lieu of addressing the motion at that time, the Court previously handling the case ordered briefing on the merits, and the parties then cross-moved for summary judgment. The case was transferred to this Court during the course of summary judgment briefing.

## II. Standard of Review

### A. Dismissal for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). It is the plaintiff's burden to establish that the court has subject matter jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required in deciding a Rule 12(b)(6) motion for failure to state a claim.

7

Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the Court is not limited to the allegations contained in the complaint. Wilderness Soc'y v. Griles, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987). "The district court retains 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,' but it must give the plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (quoting Prakash v. Am. Univ., 727 F.2d 1174, 1179–80 (D.C. Cir. 1984)).

### B. Dismissal for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. Iqbal, 556 U.S. at 678. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of facts litigated in a prior related case. See Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 49–50 (D.D.C. 2012).

### C. Summary Judgment under the APA

In a motion for summary judgment under the APA, "the standard set forth in Rule 56(a) does not apply because of the court's limited role in reviewing the administrative record." Coe v. McHugh, 968 F. Supp. 2d 237, 239 (D.D.C. 2013) (citations omitted). "'Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record.'" Bloch v. Powell, 227 F. Supp. 2d 25, 30–31 (D.D.C. 2002) (quoting Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995)). Under

the APA, the Court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "Arbitrary and capricious" review is "highly deferential" and "presumes the agency's action to be valid." Envt'l. Def. Fund, Inc. v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981). "[T]he court considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." Fund for Animals, 903 F. Supp. at 105 (citing Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989)). Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." Tourus Records, Inc. v. Drug, 259 F.3d 731, 737 (D.C. Cir. 2001). It is the plaintiff's burden to show by clearly convincing evidence that the decision was the result of a material legal error or injustice. McDougall v. Widnall, 20 F. Supp. 2d 78, 82 (D.D.C. 1998).

**III. Analysis**

    A. The Secretary's Motion to Dismiss

The Secretary moves to dismiss on three grounds: (1) issue preclusion applies because the CFC has already determined that Fulbright's claims are barred by the statute of limitations under the Tucker Act; (2) regardless of the CFC decision, Fulbright's claims are barred by the APA's statute of limitations; and (3) Fulbright's claims are alternatively barred because he could have received a full and adequate remedy in his suit before the CFC. The Court discusses each ground below.

### i. Issue Preclusion

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532, U.S. 742, 748–49 (2001)). Issue preclusion requires that:

> "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case [; and] [3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination."

Martin v. DOJ, 488 F. 3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of Amer. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)).

The Secretary argues that the CFC resolved the issues before this Court by construing Fulbright's 2008 ABCMR application for disability retirement benefits as a request for reconsideration of the ABCMR's 1993 decision, rather than a new action, and thus determining that his claim was barred by the Tucker Act's six-year statute of limitations. Def.'s Mem. in Supp. of Mot. to Dismiss at 7. The CFC's determinations, however, do not have preclusive effect in this proceeding because whether the Tucker Act's statute of limitations has expired is a different question of law than whether the APA's statute of limitations has expired.

The Tucker Act does not itself create substantive rights but instead provides a cause of action for suits for money damages against the United States based upon, among other things, an act of Congress. 28 U.S.C. § 1491(a)(1). The CFC reviewed two statutes that might have entitled Fulbright to relief under the Tucker Act if suit was brought within its six-year statute of limitations. First, the Military Pay Act ("MPA"), 37 U.S.C. § 204 (2006), entitles active-duty members of the military to challenge a wrongful termination. Claims under the MPA "accrue immediately upon discharge, because appealing to a correction board is not required for judicial review." Fulbright I,

97 Fed. Cl. at 228 (citing Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*)). Thus, any claim Fulbright might have had under the MPA would have accrued six years after he lost active-duty status in 1989. But, because Fulbright challenged the ABCMR's review of the decision to deny him medical retirement, the CFC determined that his claim was properly brought under another statute, 10 U.S.C. § 1201, which entitles a servicemember who is unfit for service to disability pay. Id. (citing Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005)). Under this statute, a decision by "'[t]he first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations[.]'" Id. (quoting Chambers, 417 F.3d at 1224). Applying this statute, the CFC determined that the Tucker Act statute of limitations began to run from the 1993 ABCMR denial of a record correction and that the 2009 ABCMR decision did not re-start the clock. Id.

The APA's statute of limitations operates differently than the Tucker Act's. As discussed more fully below, the APA permits an individual to challenge final agency action, and its statute of limitations begins to run from the date of that final action. Impro Prods., Inc. v. Block, 722 F.2d 845, 850–51 (D.C. Cir. 1983). In Havens v. Mabus, __ F.3d __, 2014 WL 3674599 (D.C. Cir. July 25, 2014), the D.C. Circuit recently held that an APA suit challenging a military corrections board decision was not precluded by a prior CFC determination that the Tucker Act statute of limitations barred adjudication. Id. at *4–6. Although Havens involved claim preclusion rather than issue preclusion, its reasoning applies equally to the Secretary's issue preclusion argument here. See, e.g., Taylor, 553 U.S. at 892. The CFC, moreover, did not analyze when the APA statute of limitations began to run in Fulbright's case. Fulbright I, 97 Fed. Cl. at 231. Indeed, it could not have done so because it lacks jurisdiction to review APA challenges. Id. Because the two statutes' limitations provisions have different standards and the CFC did not address the APA's limitations provisions, that court's ruling has no preclusive effect here.

11

Nor does the CFC's finding that the January 2009 ABCMR decision was a denial of reconsideration rather than a new claim for a record correction have preclusive effect in this matter. The application of the APA's statute of limitations, unlike the Tucker Act's, does not turn on this distinction. As discussed below, an agency decision on a request for reconsideration may be a new final agency action under the APA and therefore trigger its statute of limitations.

## ii. APA Statute of Limitations

Section 704 of the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. Unless another statute prescribes otherwise, a party must bring an APA claim within six years after the right of action first accrues. 28 U.S.C. § 2401(a); Sendra Corp. v. Magaw, 111 F.3d 162, 165 (D.C. Cir. 1997). The right of action first accrues on the date of the final agency action. See Impro Prods., 722 F.2d at 850–51.

> [T]wo conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process, . . . it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]

Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (citations omitted).

Because the CFC's Tucker Act analysis has no preclusive effect on Fulbright's APA claims, the Court must determine whether the 2009 ABCMR decision was a final agency action that triggered the APA's statute of limitations. The Court does not analyze this issue on a blank slate, as the D.C. Circuit considered a similar issue in Havens. The petitioner in Havens was a retired navy reserve officer who challenged his 1996 discharge in six record correction requests to the Navy's corrections board and subsequent suits to the CFC and this Court. 2014 WL 3674599, at *1. The corrections board's first four decisions were held to be outside the APA's statute of limitations by the time Havens filed his suit. The Circuit determined, however, that the District Court should have reviewed the board's last two determinations, which were filed within the six-year period, because

the board chose to reach the merits of the petitioner's application. See id. n.11. The Circuit similarly has explained that "[i]f for any reason the agency reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable on its merits, even though the agency merely reaffirms its original decision." Sendra Corp. v. Magaw, 111 F.3d 162, 167 (D.C. Cir. 1997) (citing among others Interstate Commerce Comm'n v. Brotherhood of Locomotive Engineers, 482 U.S. 270, 278 (1993)); see also, Houseal v. McHugh, 962 F. Supp. 2d 286, 294–95 (D.D.C. 2013) (ABCMR decision to deny request for reconsideration creates an independent claim under the APA where that decision is on the merits).

Demonstrating that no good deed goes unpunished, the ABCMR here decided to waive its three-year statute of limitations in the interest of justice and issue a new final decision on Fulbright's request for a record correction in January 2009 because it determined that he should have been promoted to major from the reserve group in 1990. AR 74–77. Based on the reasoning of both Havens and Sendra, then, this was a new final agency action that can be challenged under the APA, regardless of whether Fulbright's 2008 petition is considered a request for reconsideration of the 1993 denial or a new request for a record correction. Moreover, the ABCMR's 2009 decision passes both elements of the final agency action test: it was the Army's final decision on Fulbright's 2008 request, and it produced a change in legal rights as it required that the Army promote Fulbright to major.[4] Thus, Fulbright's claims here are not barred by the APA's statute of limitations.

---

[4] In Fulbright's complaint, he asserts jurisdiction both under the APA and the "Little" Tucker Act, which permits this Court to hear Tucker Act claims involving less than $10,000. The Court finds that, for the same reasons as stated the CFC, the Court lacks jurisdiction to hear Fulbright's Little Tucker Act claim because he filed this suit outside its statute of limitations. See Fulbright I, 97 Fed. Cl. at 228; see also Carter v. Dep't of the Navy, 5-775, 2006 WL 2471520, at *2 n.5 (D.D.C. Aug. 24, 2006), aff'd sub nom., 258 F. App'x 342 (D.C. Cir. 2007) (A dismissal based on the Tucker Act's statute of limitations has *res judicata* effect on future suits alleging the same claims under the Tucker Act).

*iii. Full and Adequate Remedy*

A plaintiff may not bring suit under the APA if he can achieve identical relief under a different statute because only "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review" under the APA. 5 U.S.C. § 704; Bennett, 520 U.S. at 162. Similarly, this Court lacks jurisdiction to hear claims that are in actuality Tucker Act claims in excess of $10,000 because Congress has vested exclusive jurisdiction for those claims in the CFC. E.g., Smalls, 471 F.3d at 189.

Fulbright's complaint requests injunctive and declaratory relief that he is entitled to a MEB and retroactive disability retirement from the Army; he does not seek monetary damages. Compl. ¶¶ 25–30. The Secretary contends that because Fulbright could have received the relief he seeks through a Tucker Act suit in the CFC, he cannot bring an APA claim here. Def.'s Mem. in Supp. of Mot. to Dismiss at 11–13. The Secretary advances two supporting arguments: that the actual relief Fulbright seeks is monetary—the record correction, it argues, is simply a means to an end—and that the CFC was capable of providing the injunctive relief Fulbright seeks. Id.

As to the first argument, "'as long as [a] complaint only requests non-monetary relief that has considerable value independent of any future potential for monetary relief [,]'" a plaintiff need not pursue a Tucker Act claim and may bring suit in this Court under the APA. Tootle v. Secretary of the Navy, 446 F.3d 167, 176 (D.C. Cir. 2006) (quoting Kidwell v. Dep't of the Army, Bd. for Correction of Military Records, 56 F.3d 279, 284 (D.C. Cir. 1995)). As the D.C. Circuit explained in Havens, a request for a record correction has independent value other than the monetary benefits a disability designation provides. See Havens, 2014 WL 3674599, at n.11; Smalls, 471 F.3d at 190 (outlining benefits apart from disability pay that flow from an Army medical retirement). Fulbright therefore may bring suit under the APA.

As to the Secretary's second argument, the CFC could not provide Fulbright's requested relief here because it cannot entertain suits for declaratory or injunctive relief, except to the extent such relief is necessary "[t]o provide an entire remedy and to complete the relief afforded by the judgment [for money damages]." 28 U.S.C. § 1491(a)(2). Because Fulbright does not seek monetary relief in this suit, the CFC could not award him the injunctive relief he requests. See Kidwell, 56 F.3d at 284; Carter v. Dep't of the Navy, No. 5-775, 2006 WL 2471520, at *2 n.5 (D.D.C. Aug. 24, 2006), aff'd sub nom., 258 F. App'x 342 (D.C. Cir. 2007) (CFC could not afford plaintiff adequate relief "[b]ecause the plaintiff appears to seek exclusively declaratory relief" for a military record correction). Many courts in this district have reviewed decisions of the ABCMR under the APA where plaintiffs have requested injunctive or declaratory relief only. See, e.g., Coburn v. McHugh, 679 F.3d 924 (D.C. Cir. 2012); Coe v. McHugh, 968 F. Supp. 2d 237 (D.D.C. 2013); Houseal, 962 F. Supp. 2d at 294–95.

Similarly, the CFC's decision not to transfer Fulbright's APA claims to this Court because the CFC could have afforded him full relief, see Fulbright I, 97 Fed. Cl. at 231, does not have preclusive effect on this Court. Unlike here, Fulbright sought monetary relief in his prior suit, which the CFC could have provided under the Tucker Act. Moreover, the CFC was analyzing whether it could transfer the case under its circuit's caselaw on transferring cases, not the "other adequate remedy" limitation on APA claims. Id. Because the CFC was addressing a different legal standard, its decision does not have preclusive effect. See Taylor, 553 U.S. at 892.

### B. Summary Judgment under the APA

Having found that the Secretary is not entitled to dismissal of Fulbright's complaint, the Court moves to the Secretary's motion for summary judgment on Fulbright's APA challenge.

"[W]hile judicial review of an agency's actions is generally narrow and subject to a presumption of validity, review of the Board's decisions in particular under the APA is 'unusually

15

deferential.'" Coe, 968 F. Supp. 2d at 240 (quoting Piersall v. Winter, 435 F.3d 319, 324 (D.C. Cir. 2006)). As a military review board, the ABCMR is entitled to greater deference than civilian administrative agencies. Id. (citing Calloway v. Brownlee, 366 F. Supp. 2d 43, 53 (D.D.C. 2005)). The Court determines whether the ABCMR "'permissibly exercised [its] discretion and made a choice that is supported by at least substantial evidence.'" Hill v. Geren, 597 F. Supp. 2d 23, 29 (D.D.C. 2009) (quoting Homer v. Roche, 226 F. Supp. 2d 222, 226 (D.D.C. 2002)). The board's decision must "minimally contain[] a rational connection between the facts found and the choice made." Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks and citations omitted). "[A] party seeking review of a board decision bears the burden of overcoming the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith.'" Roberts v. Geren, 530 F. Supp. 2d 24, 33 (D.D.C. 2007) (quoting Frizelle, 111 F.3d at 177).

At the outset, the Court must clarify the relief Fulbright requests. The Secretary argues, and Fulbright does not dispute, that Fulbright could not have been placed on the disability retirement list from the reserve group because reserve soldiers not on active duty cannot receive a MEB under Army Regulation 40-501. Def.'s Mem. in Supp. of Mot. for Sum. J. at 10; see also Army Reg. 40-501 ¶ 9–15*a* (1989) ("Reservists who do not meet the fitness standards set by chapter 3" are "transferred to the Retired Reserve . . . or discharged[.]"). Thus, Fulbright only challenges the ABCMR's review of the 1989 decision not to place him on the disability retirement list when he was removed from active duty. Pl.'s Opp. & Mem. in Supp. of Cross-Mot. for Summ. J. at 12.

While terse, the ABCMR's determination provided adequate reasoning to uphold the board's decision under the extremely deferential standard the Court must apply. The ABCMR examined Fulbright's Army and VA medical records and found that he was not entitled to a record correction for a medical disability retirement in 1989 because he had proffered no evidence

16

showing that he was unfit for service at that time. AR 8–10. It concluded that his separation medical examination, where he "was determined not to have any medical limitations[,]" refuted his claims that he was, in fact, unfit for duty. Id. at 8. The board further explained that the Army's determination was not inconsistent with Fulbright's 50 percent VA disability rating because the VA does not determine medical unfitness for service, which is a necessary requirement for Army disability retirement. Id. at 9. Because the separation medical examination records and the VA disability rating were the only two pieces of evidence put forward by Fulbright, the board's decision is fully supported by the evidence before it. The board also adequately explained its reasoning in considering this evidence.

Fulbright further argues that his separation medical examination diagnosed conditions that required mandatory referral to a MEB under Army regulations. Pl.'s Opp. & Mem. in Supp. of Cross-Mot. for Summ. J. at 14–15. Fulbright was diagnosed with chondromamalacia patella, which is inflammation of the knee. AR 140–41. A soldier suffering from this condition must be referred to a MEB if it causes "more than moderate interference with function." Army Reg. 40-501 ¶ 3-14(b), Reoccurring shoulder dislocations, from which Fulbright also suffered, require a MEB "when not repairable or surgery is contraindicated." Id. ¶ 3-12(c). For both conditions, then, a MEB is mandatory only when there has been a finding of sufficient severity. Fulbright, however, did not advance evidence before the board that would require it to find that his chondromalacia caused more than moderate interference with relevant functions or that his shoulder separation history was not repairable with surgery. In fact, the only evidence he presented showing that he had those conditions in 1989 was his separation exam, which found that none of his conditions, either in isolation or in tandem, were severe enough to warrant a finding that he was unfit for service. AR 140–41. Thus, Fulbright has not demonstrated that either the 1989 discharge or the ABCMR's decision violated Army regulations.

Fulbright also argues that the ABCMR "failed to explain why a 50% disability rating by the VA effective in 1989 or a 70% disability rating effective in 1992 is not probative of error by the Army." Def.'s Mem. in Supp. of Mot. for Sum. J. at 16. But, as noted above, the ABCMR explained that the VA does not determine whether an individual is fit for continued service in the military before determining whether they are partially or totally disabled. AR 7–9. Army regulations, on the other hand, first require the Army to determine whether the servicemember is unfit for duty. 10 U.S.C. § 1201(a). It is only after this threshold determination that the VA and Army apply the same disability rating schedule to determine a servicemember's level of disability. Army Reg. 635-40. The board laid out these distinctions in explaining why the VA's determination of disability is not determinative of Fulbright's fitness for service. AR 7–9.

Lastly, Fulbright asserts that "preponderant evidence shows that Mr. Fulbright was *not* fit for duty at the time of his separation from active duty in 1989." Def.'s Mem. in Supp. of Mot. for Sum. J. at 19 (emphasis in original). But preponderance of the evidence is not the standard this Court applies in reviewing decisions of the ABCMR under the APA. As long as the board's determination adequately states the reasons for its decision and was in the realm of reason, this Court must defer to it. E.g., Frizelle, 111 F.3d at 176. Here, the board determined that Fulbright had presented no evidence showing that he was unfit for service at the time of his separation because Army medical examiners had found him fit and the VA's disability rating was not to the contrary. This determination was reasonable in light of the evidence before the board, and the Court therefore will defer to the board's findings.

## IV. Conclusion

For the reasons above, the Court will deny Defendant's motion to dismiss, deny Plaintiff's cross-motion for summary judgment, and grant Defendant's motion for summary judgment. The Court will issue an order consistent with this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 9, 2014